HUNTSVILLE IRR. ASS'N et al. v. DISTRICT COURT OF WEBER COUNTY et al.

No. 4709. Decided September 11, 1928. (270 P. 1090.)

*Richards & Mitchell,* of Salt Lake City, for plaintiffs.

*De Vine, Howell, Stine & Gwilliam,* of Ogden, for defendants.

THURMAN, C. J.

This is an application for a writ of prohibition to restrain and prohibit the defendants and each of them from hearing or attempting to determine or adjudicate certain issues in a case now pending in the district court of Weber county. The case referred to is entitled "Plain City Irrigation Company, a Corporation, Plaintiff, v. Hooper Irrigation Company, a Corporation, et al., Defendants." The action was instituted under and in pursuance of the provisions of chapter 67, Laws of Utah 1919, which purports to provide a special procedure for the determination of rights to the use of water, especially where numerous persons claim rights to the use of the waters of a river system. The Plain City Case was instituted several years ago and involves rights to the use of the waters of the Weber river and its tributaries. The plaintiffs herein claim to be the owners

of rights to the use of water from the Ogden river, one of the tributaries of the Weber river, and in 1926, after the institution of the Plain City action and after the state engineer had filed his proposed determination of water rights as provided in the aforesaid act, the plaintiffs herein, in pursuance of other provisions of said act, filed their respective protests and objections against the proposed determination made by the state engineer. The provisions of said statute authorizing such proceedings will be hereinafter referred to with greater particularity. After filing their objections and protests in the Plain City action against the proposed determination by the state engineer, the plaintiffs herein, in the same case, instituted proceedings for an injunction against the state engineer and water commissioner for said river system to restrain them and each of them from the commission of certain alleged wrongs affecting the rights of said plaintiffs concerning the waters of said Ogden river. A temporary restraining order was issued as prayed for in the complaint. The state engineer and water commissioner thereafter filed their answer in said proceeding and moved to dissolve the restraining order. The court tried the issues presented and denied the motion to dissolve, and the restraining order is still in force. The plaintiffs herein thereafter commenced an independent action in said court against numerous water companies and corporations claiming the right to divert the waters of Ogden river at points below plaintiffs' points of diversion, and use the same upon lands situated at a lower level in the Ogden river valley. It is unnecessary to state in detail the issues presented in the action last referred to. It is sufficient to say it purports to be an action to quiet the title of all the parties to the action to rights to the use of the waters of Ogden river and for injunctive relief. Such appears to have been the status of the two actions above referred to on March 24, 1928, when the defendant court in the Plain City action, over the objection and exception of the plaintiffs, determined and announced that at the trial of said

cause which would commence on April 9, 1928, the said court would hear, consider, determine, and adjudicate the relative rights of all of the various claimants in and to the use of the waters of the said Ogden river, including the plaintiffs herein and the persons and corporations claiming the right to divert and use said water below the plaintiffs' points of diversion. Plaintiffs by this action seek to prohibit the defendant court and judge from trying or attempting, in the Plain City action, to adjudicate or determine the rights of plaintiffs and other users of the waters of Ogden river as between and against each other in respect to their relative rights to the use of said water. The contention of plaintiffs in the last analysis appears to be that chapter 67, Laws of Utah 1919, was only intended to inaugurate a special proceeding by which rights to the use of water might be determined as between the claimants and users thereof and the state of Utah and was not intended as a proceeding by which the court would be authorized in an action instituted in pursuance of that statute to adjudicate and determine the relative rights of such water users as among themselves.

In their return to the alternative writ issued in this case defendants refer to the protests and objections filed in the Plain City Case and also the injunction proceeding upon which they obtained a restraining order against the state engineer and water commissioner and make the point that plaintiffs by such proceedings invoked the jurisdiction of the district court respecting the matter which they now assert is beyond the jurisdiction of said court. Much could be said upon both sides of that question and it would be an interesting subject of discussion, but both plaintiffs and defendants appear to desire a construction by this court as to the object and purpose of the statute concerning the question at issue, to wit: Does the statute authorize a determination of rights to the use of water as between and among the claimants and users thereof, or does it merely contemplate a determination of rights as between the claim-

ants and users on one side and the state of Utah on the other? The solution of this question involves the necessity of presenting a brief summary of the provisions of the statute as far as they are material to the question above stated. This court had occasion, in a case heretofore desided involving the scope and meaning of the statute, to make a brief summary of its provisions, and we are of opinion that the summary there made is sufficient for the purpose of the instant case. The case referred to is *Smith* v. *District Court* (Utah) 256 P. 539. In view of the importance of the question here raised, we quote at length from the opinion in that case at page 541:

"The statute provides for a survey of the river system or water source by the state engineer. Then an action may be commenced by the state engineer by filing a statement with the clerk of the district court, which statement must show that a complete survey has been made, together with the names and post office addresses of the persons claiming rights to the use of water, as far as known to the engineer. If an action is commenced by some other person the engineer must be notified thereof by the clerk, and if the survey has not theretofore been made the state engineer must proceed to make it and file with the clerk a similar statement to that above referred to. In either case the clerk of the court shall publish notice in some newspaper for a specified period of time and also serve written notice by mail to each of said claimants. The notice is to the effect that each claimant must within 60 days after the service of the notice file a written statement with the clerk setting forth his claim to the use of water. Said notice shall also be personally served and shall serve as a summons in the action. Such claimants to the use of water, within the time stated in the notice, must file their statements with the clerk of the court. The nature of the statement is described in the statute and must be made under oath. Within 30 days thereafter the state engineer shall begin to tabulate the statements and as expeditiously as possible report the same to the court with his recommendations as to how all rights involved shall be determined. The filing of each statement shall be considered notice to all other claimants, and any person failing to file a statement is forever barred from asserting any rights to the use of water. It is provided, however, that if he has only been served by notice published in a newspaper he may apply to the court for permission to file a statement after the time therefor has expired, and the court may extend such time for a period not exceeding

six months from the first publication of the notice. Such person must also publish in some newspaper, as designated in the statute, notice of his claim to all other claimants in the system. The statements filed by claimants shall stand in the place of pleadings, and issues may be made thereon. The court may appoint referees, masters, engineers, soil specialists, etc., as necessity or emergency may require, to assist in taking testimony or investigating facts, and, for the purpose of determining rights to the use of water, the statements of claimants, maps, records, and reports of the state engineer, or other engineers, or soil specialists appointed by the court shall be competent and prima facie evidence of the facts therein stated. Amendments to statements or pleadings are provided for by the statute. It is then provided that after full consideration of the statements, surveys, records, and files, and a personal examination of the river system or water source, if such examination is deemed necessary, the state engineer shall formulate a proposed determination of all rights to the use of the water of such river system or water source, and a copy of such proposed determination shall be mailed to each claimant with notice that any claimant dissatisfied with such determination may within 90 days file with the clerk of said court written objections thereto. The state engineer shall distribute such waters in accordance with said proposed determination until a final decree is rendered by the court or until the court shall instruct him otherwise. Former decrees are to be observed until reversed or modified. If no contest is filed the court shall render judgment in accordance with the proposed determination, which shall determine the rights of the several claimants. If any contest or objection on the part of any claimant is filed the court shall grant a hearing thereon and take testimony after notice to all the claimants. Upon completion of the hearings the court shall enter judgment which shall determine and establish the rights of the several claimants to the use of the water. An appeal is allowed from all final judgments to the Supreme Court, on the record made in the district court, and may, as in equity cases, be on questions of both law and fact. The clerk of the district court is required to issue a certificate to each claimant to whom water has been awarded and record a duplicate thereof in a book specially provided for that purpose. Whenever any civil action is commenced in the district court involving the use of water from any river system or water source the court in its discretion may, if a general determination has not been had of the rights to the use of such water, proceed as provided in the statute. In any action for the determination of water rights the state of Utah shall be joined as a necessary party.

"Such is a general outline of the form of action provided by the

statute for the determination of rights to the use of the waters of a river system or other water source."

That, however, was not an action for the determination of rights to the use of water, but the Plain City action was involved and the question there determined was whether the pendency of the Plain City action could be pleaded in bar of another action instituted in Morgan county involving rights to the use of the waters of certain springs alleged to be tributaries of the Weber river. This court held that the pendency of the Plain City action was not a bar to the Morgan County Case because other questions were involved and other relief sought in the Morgan County Case which were not involved in the Plain City action. In other words, the cases were not the same to extent that one could be pleaded in bar of the other. But in order to determine that question it became as necessary to review the statute and determine its scope, meaning, and purpose as it is in the case at bar. The summary of the provisions of the statute above quoted covers sections 21 to 38, inclusive. In determining the general purpose of the statute as far as it affected the question involved in the Smith Case, this court, in its opinion in that case (256 P. at pages 540, 541), said:

"Sections 21 to 38, inclusive of chapter 67, supra, apparently present a comprehensive plan for the determination of water rights pertaining to a river system or other source of water. The form of action was evidently intended to apply where many persons claim rights to the use of water from such source of supply. One of the purposes of the statute was to prevent piecemeal litigation in the determination of water rights and determine them all in one action. Such is the only effectual method of determining them in order to prevent a multiplicity of actions in which the same party is oftentimes compelled to try his rights over and over again until all persons claiming rights are made parties to the action. Another purpose of the statute, evidently, was to make a permanent record of such rights by decree of court instead of permitting the evidence thereof to rest in parol. For these purposes the statute is in the highest sense remedial and will no doubt prove to be of great benefit to those persons who are owners of water rights in the systems to which that form of action applies."

The language just quoted is as applicable here as it was in the Smith Case, and, if possible, more pertinent to the question here presented. It must be conceded that the thought in the mind of the court when using the language last quoted was that the statute (chapter 67) had provided a special proceeding which in proper cases might be resorted to by the trial courts as a substitute method of determining the rights to the use of water of every person, company, or corporation within the radius of the system involved. As stated in effect in the passage last quoted, the old system of trying such cases by piecemeal had proved ineffectual in many cases and was in the highest degree unsatisfactory. The intent of the Legislature and the purpose of the statute apparently was to remedy the evil then existing in determining the rights of parties in this class of cases. The statute provides no remedy for any relief except the determination of rights to the use of water and as a necessary corollary thereto such injuctive relief as may be necessary to protect and enforce such rights. In the Smith Case, supra, both plaintiff and defendants prayed for damages against each other and sought relief which under the statute was unavailable in the Plain City Case. For that reason we held that the cases were not identical to the extent that the pendency of one case was a bar to the other.

Counsel for plaintiff in their brief quote from the opinion in the Smith Case the following passage (256 P. at page 542):

"It already appears from the outline given of the form and nature of the action provided by the statute that the sole purpose is to adjudicate and determine the rights of claimants to the waters to which the statute applies. After a most careful and thorough examination of the statute in question we have been unable to find any warrant for the court in such action to undertake to determine any question except rights to the use of the water involved and, perhaps, as a necessary corollary injunctive relief for the protection of such rights after they have been adjudicated and determined. No provision appears to have been made for cross-actions for any further or different relief than the determination of such rights."

We are of the same opinion in this case as we were in that, that—

"No provision appears to have been made for cross-actions for any further or different relief than the determination of such rights."

It is not entirely clear what interpretation counsel give to the language quoted by them or what the purpose was in quoting it. The language quoted, however, is followed with the statement by counsel that it appears from the statute that the only issue which may be tried or for which a hearing has been provided relates to the objections to the proposed determination and that it would seem the Legislature intended that the act should be limited to the determination of rights as against the state of Utah. We find nothing in the act which makes special reference to the state of Utah except in the closing sentence of section 38, wherein it is stated:

"In any action for the determination of water rights the state of Utah shall be joined as a necessary party."

Inasmuch as the state is vitally interested in conserving the unappropriated waters of the state in order that such waters may be definitely known and subjected to the supervision and control of the state engineer, it is reasonable to suppose that the purpose of making the state a party was to safeguard the rights of the state to such unappropriated waters and provide means whereby the state might have the opportunity to see that water users in their claims were restricted to a beneficial use of the water. The fact that the statute requires that the state should be a party is hardly sufficient to justify the conclusion that, therefore, the purpose of the statute was to provide a procedure solely for the purpose of determining the rights of claimants as against the state. Not only does the statute fail in any of its provisions to convey that impression, but there are many reasons against it. It can hardly be presumed that the Legislature would deliberately enact a law that would involve the agricultural communities of the state without

their consent in expensive and long protracted litigation for the sole purpose of determining whether or not there was any unappropriated water. If such was the purpose, then the statute was enacted solely for the benefit of the state as an entity and in no sense for the benefit of the water users themselves. Such a presumption finds little or no support in any provision of the statute.

It is also contended by plaintiffs that the only issues which may be tried or for which a hearing has been provided relate to the objections to the proposed determination by the state engineer. This proposition is far from being conclusive. Section 22 of the statute provides for notice to claimants and that each claimant within a certain time must file with the clerk of the district court a written statement of his claim to the use of the water. He is not limited merely to protesting against the proposed determination of the state engineer; section 29 provides that his claim, when filed, is notice to all persons, corporations, and associations of his claim to the use of the water; section 30 provides that the statement so filed by the claimant shall stand in the place of pleadings and issue may be made thereon; section 31 provides for amendments to pleadings; section 32 relates to the state engineer's proposed determination of rights; section 33 provides that, if no contest is filed, the court will render judgment in accordance with the proposed determination; section 34 provides for hearing of contests after notice to all claimants; section 35 provides that after completion of the hearing the court must enter judgment which shall determine and establish the rights of the several claimants to the use of the water; section 36 provides for an appeal to the Supreme Court on both questions of law and fact as in equity cases, and, finally, section 37 provides for a certificate to be issued by the clerk of the district court to each person to whom a right to the use of water has been awarded by judgment of the court.

In view of these provisions of the statute, it is difficult to avoid the conclusion that it was contemplated by the

Legislature that by this form of action the rights of all claimants, whether conflicting or otherwise, could and should be adjudicated and determined so that the same might be made a matter of public record available at all times as evidence of such rights.

The statute certainly contemplates that the individual rights of each claimant shall be ascertained and adjudicated. It seems to be incapable of any other construction. It would be impossible to determine and adjudicate the rights of each individual claimant without determining and adjudicating conflicting claims and disputes existing among themselves.

The statute, as before stated, provides that the claims filed by the claimants shall stand in the place of pleadings and issues may be made thereon. As we interpret that provision, if one claim conflicts with another, there is an issue to be determined. One claimant by claiming too much water may be an adverse party to every other claimant in the system. He may be adverse to only a part. In any event an issue is presented which should be tried by the court by the same rules of evidence and the same orderly procedure as in other cases. The protests filed by the plaintiffs here in the Plain City Case are claims as well as protests and constitute pleadings within the meaning of the statute. They present an issue to every other claimant in the system who disputes the plaintiffs' claims. The statute provides that pleadings may be amended. Every facility seems to have been provided for a thorough adjudication of the rights of each claimant as against every other claimant as well as against the state. There is nothing in any previous decision of this court involving this statute in conflict with these views.

Many constitutional objections were urged against the statute in *Eden Irrigation District* v. *District Court,* 61 Utah 103, 211 P. 957. Such objections were held by this court to be without merit. In *Mammoth Canal & Irrigation Co.* v. *Burton,* District Judge (Utah) 259 P. 408, this court

had under review certain provisions of the statute here in question. In that case an action had been instituted and tried in the district court of Beaver county for the determination of water rights in the Beaver river. It was the ordinary form of action to quiet title to certain water rights in the Beaver river. Judgment was rendered for plaintiffs, from which judgment defendants appealed to this court. The judgment was reversed, and, upon the cause being remanded, the district court, in the exercise of its discretion under section 38 of the statute, brought the case within the purview of the statute and ordered that the trial proceed in accordance therewith for a general determination. A writ of prohibition was applied for to this court by one who was not a party to the action, but was a user of water in the same system and an alternative writ was granted. This court, after a hearing, ordered that the alternative writ be quashed and the proceeding dismissed. Much is said in the opinion in that case in harmony with the views herein expressed. It, however, was not so much what the court said as what it actually did. It sustained the jurisdiction of the trial court to order a general adjudication under chapter 67 of the water rights involved, notwithstanding the case, as originally instituted, was for the determination of water rights not as against the state, but as between the plaintiffs and defendants in that case.

There is an apparent incongruity in some of the sections of the statute. Section 20 provides for initiating an action by water users filing a petition with the state engineer for the determination of their relative rights. Section 21 provides for the initiation of an action by the state engineer and section 22 provides for initiating an action by some other person or persons, apparently in the ordinary course of judicial procedure. Neither of the first two methods make provisions for an independent method of determining such rights by a constitutional tribunal. Hence we are forced to conclude that the Legislature intended that the mode of procedure we have already considered by which the

courts of law are the final arbiters of such rights is the method of procedure that should be resorted to whenever the provisions of chapter 67 are properly invoked, whatever may have been the method of initiating the action; otherwise, the first two methods would be ineffectual for any purpose because of their incompleteness.

The point is made by plaintiffs that the term *"relative rights"* nowhere appears in the statute except in section 20 which provides for an independent form of action and therefore the term *"relative* rights" should not be read into the method of procedure adopted in the instant case. That appears to the court to be a narrow ledge upon which to stand —a fragile basis upon which to found an argument in support of their contention. As already suggested, in one form or another, it is difficult, in an action to determine rights to the use of water and to quiet title therto among numerous claimants and water users, for the court to distinguish the difference between the terms "rights" and *"relative* rights." As we understand it, in an action of that nature, the term "rights" of a party mean his "rights" as against every other party to the action.

Counsel for plaintiffs have industriously called our attention to Revised Laws of Nevada 1919, the Laws of Oregon 1910, the Compiled Laws of Wyoming 1920, Mills' Annotated Statutes of Colorado, and the Revised Statutes of Nebraska, which respectively relate to their systems of determining rights to the use of water. The point is made that in some of them, especially the Oregon and Nevada statutes, the term *"relative* rights" is frequently employed, while in the Utah statute it is used only once and that in another form of action. That, perhaps, is a legitimate basis for argument, but it is far from convincing, especially as it does not appear that the Utah statute was adopted from either of the statutes mentioned. Besides this, the purpose and object of the Utah statute as a remedy for evils existing when the statute was enacted is so obvious to the mind of the court that it cannot, without palpably disregarding

the ordinary rules of construction, determine the question here raised in accordance with plaintiffs' contention.

The court is of opinion that the defendants' court and judge have jurisdiction to hear, try, and determine the issues presented in the Plain City Case and that those issues involve the rights of the parties therein including the state of Utah for and against each other to all of the waters of the Weber river system.

The alternative writ heretofore issued is hereby quashed, and the proceeding dismissed at plaintiffs' cost.

CHERRY, HANSEN, and GIDEON, JJ., concur.

STRAUP, J., concurs in result.